IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUPAL SONI, | |
| Plaintiff, | Case No. 25 cv 4863 |
| v. | Honorable Sunil R. Harjani |
| PAUL M. ANGELL FAMILY FOUNDATION, AND PAUL M. ANGELL FAMILY FOUNDATION 403(B) PENSION PLAN, | |
| Defendants. | |

## **MEMORANDUM OPINION AND ORDER**

Rupal Soni alleges that she was discriminated and retaliated against by her employer, Defendant Paul M. Angell Family Foundation (Foundation), and ultimately terminated based on her race. In addition to those claims, Soni alleges that the Foundation and Paul M. Angell Family Foundation 403(b) Pension Plan (Plan) breached their fiduciary duties in violation of ERISA. Presently before the Court is Defendants' partial motion to dismiss the ERISA count, arguing that Plaintiff failed to exhaust her administrative remedies, failed to sufficiently allege an ERISA breach of fiduciary duties claim, and that her claims are time-barred. [26]. For the reasons stated below, the motion to dismiss [26] is denied.

## Background

Soni was an employee of the Foundation from January 2016 until her termination in November 2023. [22] ¶¶ 11, 88. She brings several counts related to her termination, including discrimination and retaliation based on race, and a single count of breach of fiduciary duties in violation of ERISA. The current motion to dismiss only relates to the ERISA claim (Count Six). [26].

Relevant to this motion, Plaintiff alleges that the Foundation is the plan administrator of the Plan and that Charles Schwab was the sole vendor eligible to accept ongoing contributions. [22] ¶¶ 5, 6, 16, 18. When she became eligible to join the Plan, Plaintiff completed the authorization forms to contribute the maximum amount allowed by the IRS. *Id.* ¶ 19. Over the next several months, Plaintiff asked Michael Angell, the Foundation's Treasurer and a Plan Administrator, and Kim Van Horn (her supervisor and the only other employee of the Foundation) how to invest her retirement contributions, but did not receive an answer. *Id.* ¶ 20. So, she went to a local branch of Charles Schwab in October 2016 seeking assistance. *Id.* ¶ 21. There, a Charles Schwab representative assisted her in accessing her account and allocated her contributions to an age-appropriate target-date investment fund because it was low-cost and she wanted to "set and forget" her investment. *Id.* ¶ 22. During this visit, Plaintiff was informed that the Plan structure did

not allow for direct access without the express approval of Michael Angell. *Id.* ¶ 23. From July 1, 2016, through November 15, 2023, Plaintiff contributed $138,332.44 to her individual Plan account, and the Foundation made an additional $30,554.52 in "matched" and $38,128.99 in "unmatched" contributions to her individual Plan account. *Id.* ¶ 26. Plaintiff alleges that the Foundation failed to send her the required annual notices and other required disclosures, and she believes that they were sent to Michael Angell at his home address. *Id.* ¶ 27. She also did not receive any individual account balance statements from Charles Schwab, which she also believes were sent to Angell at the Plan's request. *Id.* ¶ 28.

After her termination, Plaintiff transferred her Plan account balance to a personal retirement account and discovered that none of the contributions she or the Foundation made to her individual Plan account (besides the one in 2016) were invested in any funds. *Id.* ¶ 91. Plaintiff asked Charles Schwab about this and was informed, for the first time, that the Plan required her to separately allocate every contribution made to her individual Plan account at the time that contribution was made. *Id.* ¶ 92. This requirement was not disclosed to her at the time of her enrollment or during her employment. *Id.* Plaintiff alleges that the Plan's Summary Plan Description contains the following provision:

> How will my account balances be invested if I do not make an investment election?
>
> If you do not make an investment election, your account balances will be placed in investments selected by the Plan Administrator.

*Id.* ¶ 94. Yet, contrary to this language, the Plan Administrator did not place any of the unallocated portions of Plaintiff's account balances into an investment fund. *Id.* ¶ 95. Plaintiff alerted Wendy Vendel and Jim Angell to this on December 2, 2023, and her attorney raised the issue with the Foundation on January 12, 2024. *Id.* ¶¶ 97, 98. She had no success in this endeavor and subsequently filed suit.

## Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Mgmt. Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). At the same time, a complaint must consist of more than "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Discussion

Defendants seek to dismiss Plaintiff's ERISA claim because she failed to exhaust her administrative remedies or plead a circumstance that would excuse her failure. Defendants also argue that she failed to sufficiently allege they breached their fiduciary duties and that her lawsuit is time-barred.

### I.     Exhaustion

Defendants' opening argument for why the First Amended Complaint should be dismissed is Plaintiff's purported lack of exhaustion of her administrative remedies. A plaintiff's failure to exhaust administrative remedies is an affirmative defense that she need not anticipate in her complaint, and can only be a basis for dismissal if the plaintiff pleads herself out of court "by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Here, Plaintiff alleged that she did not exhaust her administrative remedies and that she did not have to exhaust them. [22] ¶ 101.

Since an ERISA plaintiff needs only exhaust *available* remedies, the Seventh Circuit recognizes two circumstances in which a failure to exhaust may be excused: (1) where there is a lack of meaningful access to review procedures, or (2) where pursuing internal plan remedies would be futile. *Schorsh v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012). Plaintiff alleges that there was no process under the Plan by which she could exhaust her breach of fiduciary duty claims. [22] ¶ 101. Defendants respond that the Plan provided a method by which she could file a claim, but she did not do so. [26] at 9. In support of this, Defendants point to the Summary Plan Description, which has a process for making and appealing a claim. *Id.* Plaintiff contends that the Summary Plan Description provides a method for filing a claim for benefits and any adverse benefit determinations, which does not include a procedure to exhaust a claim for breach of fiduciary duties. [29] at 8; [22] ¶ 101. The Summary Plan Description[1] provides, under the Claim Procedures section:

> Application for Benefits. You or any other person entitled to benefits from the Plan (a "Claimant") may apply for such benefits by completing and filing a claim with the Plan Administrator. Any such claim must be in writing and must include all information and evidence that the Plan Administrator deems necessary to properly evaluate the merit of, and to make any necessary determinations, on a claim for benefits. The Plan Administrator may request any additional information necessary to evaluate the claims.
>
> …

---

[1] The Court can consider the Summary Plan Description because Plaintiff discusses the Summary Plan Description throughout the Amended Complaint, and because it is central to Plaintiff's claims. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (Describing the "liberal" rule for considering documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [her] claim.").

> Content of Notice of Denied Claim. If a claim is wholly or partially denied, the Plan Administrator will provide the Claimant with a written notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) any material or information needed to grant the claim and an explanation of why the additional information is necessary, and (4) an explanation of the steps that the Claimant must take if they wish to appeal the denial, including a statement that the Claimant may bring a civil action under ERISA.

[26-1] at 13–14. The language of the claim procedure applies to claims for, and denials of, benefits, without any reference to claims for breach of fiduciary duties, which is what Plaintiff alleged here. Taking this allegation as true, this shows a lack of access to a review procedure because there was no *available* process for her to raise her breach of fiduciary duty claim. As other courts have found, when a plan's review procedure is only for claims for benefits and not for claims of breach of fiduciary duties, then a Plaintiff does not need to exhaust the administrative remedies. *See Baird v. Steel Dynamics, Inc.*, 2024 WL 3983741, at *3 (N.D. Ind. Aug. 29, 2024) ("According to Plaintiffs, this language limits the claims review process to 'claims for benefits,' which does not include breach of fiduciary duty claims or claims for Plan-wide relief."); *Gaylor v. Donald B. MacNeal, Inc.*, 1996 WL 224566, at *3 (N.D. Ill. May 1, 1996) (finding the court did not need to resolve the exhaustion issue when, as alleged, the plan did not provide any procedures for those types of claims).

Further, Plaintiff alleged that she alerted the Director of Operations, Wendy Vendel, and its Board President, Jim Angell, of the issue on December 2, 2023. [22] ¶ 97. Then, in her response to Defendants' motion, she included an email from Jim Angell notifying her that the Foundation made all required payments and that "We consider this matter closed." [29-1].[2] Plaintiff argues that this shows that Defendants did not provide her with the proper notice of adverse action as required by the Summary Plan Description, nor did they suggest that her request did not constitute a formal claim. [29] at 9. Defendants argue that Plaintiff's email does not establish that she filed a "formal claim" and that she cannot establish that an appeal within the process would be futile to the degree that there is no doubt how it would end. [33] at 13. But Plaintiff's allegations show, at least at this stage in the litigation, that she lacked meaningful access to review procedures. In response to her submissions about her claim, the Foundation's Board President responded, without providing the information required in a notice of denial, with: "We consider this matter closed."[29] at 9. Therefore, Plaintiff has not pled herself out of court, and the motion to dismiss on failure to exhaust grounds is denied.

## II. Breach

Next, Defendants argue that Plaintiff failed to sufficiently plead a claim for breach of fiduciary duties. To state a claim for breach of fiduciary duty, Plaintiff must establish "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the

---

[2] Defendants argue the Court should not consider this email because Plaintiff did not include it in her Amended Complaint. However, "[m]aterials or elaborations in [a] brief opposing dismissal may be considered, so long as those materials or elaborations are 'consistent with the pleadings.'" *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). As this email, and Plaintiff's arguments in her opposition brief, are consistent with her allegations in the Amended Complaint, the Court will consider them.

4

breach resulted in harm to the plaintiff." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)).

The crux of Plaintiff's breach argument comes down to who was responsible for investing the funds once they were placed into her account with Charles Schwab. Plaintiff alleges the funds should have been directed into either the target-date investment fund she selected or that the Foundation should have invested the unallocated funds in an appropriate investment fund. [22] ¶ 125. While Defendants frame Plaintiff's allegations as a clerical mistake by a Charles Schwab employee in 2016, the central issue is that her funds were repeatedly left unallocated. *Id.* ¶ 95. Defendants argue that Plaintiff's interpretation of the Plan documents is wrong and that their duty ended with ensuring the funds were deposited into her account. The provision central to this dispute in the Plan's Summary Plan Description provides:

> How will my account balances be invested if I do not make an investment election?
>
> If you do not make an investment election your account balances will be placed in investments selected by the Plan Administrator.[3]

The addition of this language to the Plan documents creates an unusual obligation for the Plan Administrator. But "[t]o a degree unusual in the law, ERISA focuses on following written plan documents, regardless of other evidence." *Su v. Johnson*, 68 F.4th 345, 351 (7th Cir. 2023). "ERISA requires fiduciaries to 'discharge [their] duties ... in accordance with the documents and instruments governing the plan.'" *Id.* at 352 (quoting 29 U.S.C. § 1104(a)(1)(D)). In *Su*, the plan at issue required the defendant to act at the direction of the administrator, but despite this requirement, the defendant often acted at her own direction and unilaterally withdrew funds from the plan without consulting the administrator. *Id.* Therefore, it was undisputed that the "defendants violated their duty to act 'in accordance with the documents and instruments governing' the plan." *Id.* (quoting 29 U.S.C. § 1104(a)(1)(D)). Similarly, in *Gardner-Keegan v. W.W. Grainger, Inc.*, the defendants argued that the plaintiffs failed to plausibly allege that the plan committee failed to comply with the plan based on the defendant's interpretation of their obligations, while the plaintiffs disagreed with that interpretation. 2026 WL 194772, at *6 (N.D. Ill. Jan. 26, 2026). The court found that the language in the plan was unambiguous and the term "shall be utilized" establishes an obligation to "pay reasonable administrative expenses of the Plan and to restore Accounts for a Plan Year." *Id.* at *7. Therefore, the plaintiff's allegation that the plan committee failed to do so sufficiently alleged a failure to follow the language of the plan. *Id.*

As in *Su* and *Gardner-Keegan*, the issue here is whether Defendants breached their fiduciary duties by failing to act in accordance with the Plan documents. Viewing the allegations in the light most favorable to Plaintiff, her allegation that the plan documents place an obligation on Defendants to invest the unelected funds is plausible based on the plain text of the plan. Therefore, Defendants' motion to dismiss is denied.

---

[3] [22] ¶ 94.

### III. Ancillary Arguments

Lastly, Defendants raise a series of scatter-shot arguments about why Plaintiff's ERISA claim is insufficiently pled. [26] at 10–14. Largely, these arguments fail because they take a narrow view of the Plaintiff's allegations as only alleging a breach by Charles Schwab, but, as discussed above, Plaintiff alleges a breach because of Defendants' own actions or failure to act. Defendants' other arguments are perfunctory and therefore waived. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (cleaned up); *Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up). Even so, a few of Defendants' arguments merit a brief discussion.

Defendants contend that Plaintiff's claim should be dismissed because her allegations are outside the 6-year statute of limitations. Defendants argue the only breach alleged in the Amended Complaint is the failure by Charles Schwab (who is not a defendant here) in 2016 to follow her instructions about how she wanted the account set up. [26] at 10. But this interpretation is too narrow a reading of Plaintiff's allegations. While Plaintiff alleges that she went to Charles Schwab in 2016 and made that initial investment fund election, she also alleges that, per the Plan Documents, if she did not make investment elections—as occurred with all of her contributions after she met with Charles Schwab—the Plan Administrator would select an investment. Plaintiff alleges this did not happen and that is the basis for her breach of fiduciary duties claim. Plaintiff then alleges that this repeated failure to invest her funds continued until her termination in November 2023, which is well within the 6-year statute of limitations from when this case was filed on May 2, 2025. *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."). Therefore, while Defendants can dispute whether this conduct is a breach, it is plausibly alleged to be within the statute of limitations, and Plaintiff's claims are not time-barred.[4]

Defendants also argue that they had no knowledge or control over Charles Schwab's conduct or actions and cannot be held liable for its mistakes. Plaintiff responds that the Foundation is responsible for Charles Schwab's actions because it appointed Schwab and it is a co-fiduciary. But, like Defendants' other arguments, this ignores that the Amended Complaint alleges a series of violations from the Foundation's own conduct, not merely a single event in 2016. Further, as alleged in the Amended Complaint, the Foundation has a duty to monitor those it appoints to administer the plan and "cannot escape liability by passing the buck to another person and then turning a blind eye." *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011). As alleged, it is plausible that this duty to monitor would apply to Charles Schwab. Plaintiff also alleges Defendants' knowledge of the uninvested funds based on their receipt of annual notices, required

---

[4] The question remains whether—if the breach was Defendants failing to invest the post-2016 contributions—that conduct can reach the actions of Charles Schwab in 2016, which is otherwise outside the 6-year statute of limitations. 29 U.S.C. § 1113 (1). But as neither party argued or briefed this issue, the Court will not consider it today.

disclosures, and balance statements for Plaintiff's account. [22] ¶¶ 27, 28. Therefore, Defendants' arguments go to the merits of the Plaintiff's allegations, which this Court must accept as true at this stage, and cannot form the basis for a motion to dismiss.

Lastly, Defendants argue that the ERISA claim must be dismissed because Plaintiff cannot bring a claim under Section 502(a)(2) in her individual capacity. Plaintiff does not directly respond to this argument, but her complaint brings claims under Sections 502(a)(2) and 502(a)(3). "[A] participant in a defined contribution plan may bring a § 502(a)(2) action for breach of fiduciary duty as to an individual account." *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008)). Further, at this stage in the litigation, Plaintiff can seek alternative equitable relief under Section 502(a)(3), which, as she alleges, would be unavailable under Section 502(a)(2). *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 283 (7th Cir. 2011) ("It is this provision of ERISA that permits a participant to obtain relief for a breach of fiduciary duty on behalf of himself as opposed to the plan."). Therefore, this is not a basis to dismiss the complaint.

## Conclusion

For the above reasons, Defendants' renewed partial motion to dismiss [26] is denied.

**SO ORDERED.**

Dated: February 18, 2026

_____
Sunil R. Harjani
United States District Judge